# Whether the Defense of Marriage Act Precludes the Nonbiological Child of a Member of a Vermont Civil Union From Qualifying for Child's Insurance Benefits Under the Social Security Act

The Defense of Marriage Act would not prevent the non-biological child of a partner in a Vermont civil union from receiving child's insurance benefits under the Social Security Act.

October 16, 2007

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
SOCIAL SECURITY ADMINISTRATION

The Social Security Act defines a "child" for the purpose of determining eligibility for child's insurance benefits ("CIB") by reference to the inheritance law in the relevant state. 42 U.S.C. § 416(h)(2) (2000). The law provides that a child shall receive CIB on account of a disabled parent when the child would inherit as a son or daughter if the parent were to die intestate. *Id.* Vermont law provides that the parties to a same-sex civil union enjoy the same benefits of parentage laws that would apply to a married couple, and so the natural child of one member of the union may be deemed to be the child of the other member for purposes of intestacy under Vermont law. Vt. Stat. Ann. tit. 15, § 1204; *see also Miller-Jenkins v. Miller-Jenkins*, 912 A.2d 951, 970 (Vt. 2006).

You have asked whether the Defense of Marriage Act ("DOMA"), Pub. L. No. 104-199, 110 Stat. 2419 (1996), would prevent the Commissioner of Social Security (the "Commissioner") from providing the non-biological child of one member of a Vermont civil union with social security benefits on account of that individual's relationship with the child.[1] We conclude that it would not. Although DOMA limits the definition of "marriage" and "spouse" for purposes of federal law, the Social Security Act does not condition eligibility for CIB on the existence of a marriage or on the federal rights of a spouse in the circumstances of this case; rather, eligibility turns upon the state's recognition of a parent-child relationship, and specifically, the right to inherit as a child under state law. A child's inheritance rights under state law may be independent of the existence of a marriage or spousal relationship, and that is indeed the case in Vermont. Accordingly, we conclude that nothing in DOMA would prevent the non-biological child of a

---

[1] *See* Letter for Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Thomas W. Crawley, Acting General Counsel, Social Security Administration (June 6, 2007) ("SSA Letter"). We are informed that the Commissioner has agreed to be bound by the opinion of this Office. *See* E-mail for John P. Elwood, Deputy Assistant Attorney General, Office of Legal Counsel, from Thomas W. Crawley, Acting General Counsel, Social Security Administration (June 29, 2007, 12:16 EST).

partner in a Vermont civil union from receiving CIB under the Social Security Act.

## I.

Two women, Karen and Monique, entered into a civil union under Vermont law in 2002, and Monique gave birth to a son, Elijah, in 2003. Karen did not formally adopt Elijah, but she appears on the birth certificate as his "2nd parent" and on other documents as his "civil union parent." *See* SSA Letter at 1. In 2005, the Commissioner found Karen to be eligible for disability benefits, and she then filed an application for CIB on behalf of Elijah. *Id*. At the time of the application, Karen was domiciled in Vermont. *Id*. at 2. In order to determine whether federal law would allow Elijah to qualify as Karen's "child" on account of her civil union with Elijah's natural mother, we first consider whether Elijah would qualify as Karen's "child" under 42 U.S.C. § 416(e)(1). We then consider whether the interpretive principle mandated by DOMA affects Elijah's status under the Social Security Act.

The Social Security Act provides that an applicant may be eligible for CIB if he is the dependent "child" of an individual entitled to disability benefits. 42 U.S.C. § 402(d) (2000). The Act defines "child" to include "the child or legally adopted child of an individual," as well as stepchildren and, in some cases, grandchildren. *Id*. § 416(e)(1). In many, if not most, cases the existence of a parent-child relationship must be established under the provisions of section 416(h) that further define the relationship for CIB purposes.

With respect to Elijah's relationship to Karen, the Act directs the Commissioner to look to how the relevant state would define the parent-child relationship for purposes of inheritance law. Specifically, the Act provides:

> [T]he Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application . . . . Applicants who according to such law would have the same status relative to taking intestate personal property as a child . . . shall be deemed such.

42 U.S.C. § 416(h)(2)(A). The Commissioner has issued regulations tracking this statutory provision, and they provide, in relevant part, that a "natural child" shall be defined based on "the law on inheritance rights that the State courts would use to decide whether [the individual] could inherit a child's share of the insured's personal property if the insured were to die without leaving a will." 20 C.F.R. § 404.355(b)(1) (2007). Where, as here, the insured is living, the Commissioner

"look[s] to the laws of the State where the insured has his or her permanent home." *Id.*

Because Karen was domiciled in Vermont at the time of Elijah's application, we look to Vermont law for guidance. The Vermont statute addressing intestate succession provides that the "estate of a decedent, not devised nor bequeathed and not otherwise appropriated and distributed in pursuance of law, shall descend" in the first instance "to the children of such decedent or the legal representatives of deceased children," but the statute does not otherwise define "children." Vt. Stat. Ann. tit. 14, § 551(1); *see also Miller-Jenkins v. Miller-Jenkins*, 912 A.2d 951, 969 (Vt. 2006) (recognizing that under Vermont law, "the term 'parent' is specific to the context of the family involved" and has been principally defined through judicial precedent). The civil union statute provides broadly that parties to a civil union shall have "all the same benefits, protections and responsibilities under law . . . as are granted to spouses in a marriage," Vt. Stat. Ann. tit. 15, § 1204(a), including "laws relating to . . . intestate succession," *id.* § 1204(e)(1). The statute further provides that parties to a civil union shall enjoy the same rights, "with respect to a child of whom either becomes the natural parent during the term of the civil union," as "those of a married couple." *Id.* § 1204(f).

The Vermont Supreme Court recently relied upon these provisions to hold that a child, like Elijah, who is born to one partner of a civil union during the existence of the civil union, should be deemed the child of the other partner under Vermont law for purposes of determining custodial rights following the dissolution of the civil union. *Miller-Jenkins*, 912 A.2d at 969–70.[2] The court reasoned that in the context of marriage, courts have regularly found that a child born by artificial insemination should be deemed to be the child of the husband, even if there is no biological connection. Such holdings followed the intent of the spouses in the marriage, ensured that the child would have two parents, and avoided the need for requiring adoption proceedings in every case. *Id.* Because section 1204 requires equal treatment of partners in civil unions, the court held that the same result should apply to the non-biological partner in a civil union. *Id.* at 970–71.

Although *Miller-Jenkins* recognized the parent-child relationship in the context of custodial rights, we see no reason why Vermont courts would reach a different result when considering who would constitute a child for purposes of inheritance. The Vermont civil union statute makes clear that a partner in a civil union shall enjoy not merely the "rights" that a married person would enjoy, but more broadly all "benefits, protections and responsibilities under law." Vt. Stat. Ann. tit. 15,

---

[2] In addition, the Vermont Supreme Court identified certain factors to support its conclusion, including the following: the parties to the civil union expected and intended for the non-biological parent to be the child's parent, the non-biological partner participated in the artificial insemination decision, and no other individual had a claim to be the child's parent. *Id.* at 970. In Elijah's case, it is apparent from the birth certificate and other documents that the partners to the civil union intended for Karen to be his parent. *See* SSA Letter at 1.

§ 1204(a). With respect to civil union partners, these "benefits, protections and responsibilities" specifically include both bequeathing and inheriting property, should one partner die intestate. *Id*. § 1204(e)(1). Insofar as Vermont law further seeks to place partners in a civil union on equal footing with married couples with respect to children, *see id*. § 1204(f), we believe that Vermont courts similarly would conclude that the property of a partner in a civil union who dies intestate would descend on the same terms as it would for a married person, and in particular, would go to those who would be recognized as his or her children under Vermont law. Accordingly, as applied here, we conclude that Vermont law would recognize Elijah as Karen's child for purposes of his right to inherit, should she die intestate.

## II.

The question remains whether DOMA would prevent the Commissioner from otherwise recognizing Elijah as a beneficiary under the Social Security Act. Congress enacted DOMA in response to the decision of the Hawaii Supreme Court in *Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993), which held that the equal protection guarantee of that state's constitution required the recognition of same-sex marriage. *See* H.R. Rep. No. 104-664, at 3–4 (1996) ("House Report"). DOMA seeks to ensure that neither the federal government nor individual states are forced to give legal effect to same-sex marriages, either on account of one state's recognizing such a marriage or by the judicial interpretation of existing law. *See id.* at 2. At the same time, DOMA respects states' traditional rights in the arena of domestic relations, allowing them to establish their own public policies with respect to same-sex unions. *See id.*[3]

DOMA contains two operative provisions. The first provision, codified at 28 U.S.C. § 1738C (2000), provides that a state need not give full faith and credit to "a relationship between persons of the same sex that is treated as a marriage" under the laws of another state. That provision, which provides that each state may adopt its own public policy with respect to same-sex marriage, is not implicated here. It is the second provision of DOMA, codified at 1 U.S.C. § 7, that arguably might bear upon Elijah's entitlement to CIB under the Social Security Act. This section, 1 U.S.C. § 7, was added to the Dictionary Act, 1 U.S.C. §§ 1 *et seq.*, to

---

[3] The House Report described DOMA as having "two primary purposes":

> The first is to defend the institution of traditional heterosexual marriage. The second is to protect the right of the States to formulate their own public policy regarding the legal recognition of same-sex unions, free from any federal constitutional implications that might attend the recognition by one State of the right for homosexual couples to acquire marriage licenses.

*Id.* at 2.

define "marriage" and "spouse" for purposes of federal statutes and regulations as follows:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word "marriage" means *only a legal union between one man and one woman as husband and* wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife.

1 U.S.C. § 7. This section reflects a federal policy against interpreting any federal law, regulation, or other administrative act so as to afford legal consequence to same-sex marriages. The provision defines "marriage" and "spouse" for those purposes so as to exclude reading those terms to extend to same-sex relationships.

By its terms, 1 U.S.C. § 7 does not apply to Elijah's eligibility for CIB under the Social Security Act. As discussed, Elijah's eligibility arises out of his status as Karen's "child" under section 416, and the law provides that he "shall be deemed such" simply because he "would have the same status relative to taking intestate personal property as a child" under Vermont law. 42 U.S.C. § 416(h)(2)(A). That analysis does not require any interpretation of the words "marriage" or "spouse" under the Social Security Act or any other provision of federal law. Nor does the analysis even require interpreting those terms under Vermont law in a way that might have consequence for the administration of federal benefits. An individual may qualify as a "child" under section 416 wholly apart from the existence of any marriage at all, as would be the case of a natural-born child of an unmarried couple, or, as is the case here, where Vermont recognizes a parent-child relationship outside the context of marriage. The fact that Elijah's right of inheritance ultimately derives from Vermont's recognition of a same-sex civil union is simply immaterial under DOMA. Accordingly, DOMA would not preclude Elijah from qualifying for CIB as a child of Karen under the Social Security Act.

STEVEN A. ENGEL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*